# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Amor Paulina Hirst, ) | Civil Action No. 6:13-00729-JMC |
| ) | |
| Petitioner, ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Xavier Emanuel Guillaume ) | |
| Salvatore Tiberghien, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner Amor Paulina Hirst ("Petitioner") filed the instant action against Respondent Xavier Emanuel Guillaume Salvatore Tiberghien ("Respondent") as a verified petition for the return of children to the United Kingdom (the "Petition") pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11611. (See ECF No. 1.) Specifically, Petitioner alleged that Respondent wrongfully retained their minor children, M.S.T. and A.D.T., in the United States without Petitioner's consent, starting on January 7, 2013. (Id. at 2, 4-5.) On April 30, 2013, the court granted the Petition and ordered the return of M.S.T. and A.D.T. to Petitioner. (ECF No. 59.)

This matter is before the court on a motion for necessary expenses associated with bringing an action under ICARA, which motion was filed by Petitioner on May 17, 2013, pursuant to Fed. R. Civ. P. 54(d)(2), 28 U.S.C. § 1920, and § 11607 of ICARA. (ECF No. 71.) In the motion for necessary expenses, Petitioner seeks court costs in the amount of $1,234.60[1];

---

[1] Petitioner also filed a bill of costs, requesting that Respondent be taxed costs totaling $1,234.60. (ECF No. 72.) Respondent does not object to Petitioner's bill of costs. (See ECF No. 73 at 5.) As a result, the court granted Petitioner costs in the amount of $1,234.60. (ECF No. 77.) Petitioner is not entitled to recover double her court costs and she admits that she is not seeking a

legal fees and expenses in the amount of $30,577.05; and non-legal expenses in the amount of $9,603.08. (ECF No. 71.) Respondent filed opposition to Petitioner's motion for necessary expenses, asserting that the expenses sought by Petitioner are clearly inappropriate. (ECF No. 73.) For the reasons set forth herein, the court **GRANTS IN PART** Petitioner's motion for necessary expenses and awards her legal fees and expenses against Respondent in the total amount of $37,217.35.

## I. RELEVANT BACKGROUND

Petitioner and Respondent had agreed that M.S.T. and A.D.T. would spend the Christmas holidays with Respondent in the United States, departing the United Kingdom on December 23, 2012 and returning there on January 7, 2013. (ECF No. 64 at 6 ¶ 11; ECF No. 1-6.) On January 2nd and 5th of 2013, Respondent informed Petitioner that M.S.T. and A.D.T. would not be returning to the United Kingdom as previously agreed. (ECF No. 64 at 7 ¶ 12; ECF No. 1-8 at 5.) Thereafter, Petitioner sought the administrative return of M.S.T. and A.D.T. by filing an ICACU application with the Central Authority for England and Wales. (ECF No. 64 at 7 ¶ 13; ECF No. 1-8.) The Central Authority for England and Wales subsequently transmitted the ICACU application to the United States Central Authority, which attempted to negotiate Respondent's voluntary return of M.S.T. and A.D.T. (Id.; see also ECF No. 1-9.) In response to communications from the United States Central Authority, Respondent stated that he would not return M.S.T. and A.D.T., alleging various acts of neglect and mistreatment by Petitioner of M.S.T. and A.D.T. and asserting that they wished to remain with Respondent in the United States. (ECF No. 64 at 7 ¶ 15; ECF No. 1-10 at 2-6.)

Petitioner filed the Petition on March 19, 2013. (ECF No. 1.) Following a show cause

---

double recovery. (See ECF No. 71 at 3.) Therefore, the court will strike the request for court costs from the motion for necessary expenses.

hearing on March 29, 2013, Respondent filed an answer to the Petition on April 3, 2013, which answer he amended on April 16th and 24th of 2013. (ECF Nos. 22, 28, 41, 51.) The court conducted a bench trial on April 29, 2013. (ECF No. 64 at 9-15; ECF No. 56.) Over the course of the one-day trial, the court heard testimony from Petitioner; her husband, Jamie Hirst; Petitioner's Expert, Simon Craddock (who provided testimony about family law and child custody procedures in the United Kingdom); and Respondent. (Id.; see also ECF No. 57.) The court also interviewed M.S.T. and A.D.T. in camera on the record outside the presence of the parties and their counsel. (Id.) After carefully considering all testimony, exhibits, and arguments of counsel presented at the bench trial of this matter, and taking into account the credibility and accuracy of the evidence, and in consideration of the applicable law, the court granted the Petition on April 30, 2013, and ordered the return of M.S.T. and A.D.T. to Petitioner. (ECF No. 59.) On May 3, 2013, the court entered an order and opinion that provided findings of fact and conclusions of law in support of the April 30, 2013 order. (ECF No. 64.) M.S.T. and A.D.T. returned to the United Kingdom on May 4, 2013. (ECF No. 69.)

Thereafter, on May 17, 2013, Petitioner filed the instant motion for necessary expenses. (ECF No. 71.) Respondent filed opposition to Petitioner's motion on June 3, 2013. (ECF No. 73.)

## II.     LEGAL STANDARD AND ANALYSIS

A.     Costs and Fees under ICARA

An award of fees and costs in cases under ICARA is governed by 42 U.S.C. § 11607(b), which provides that "[a]ny court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during

3

the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3). Section 11607(b)(3) specifically provides for shifting the burden of fees, costs, and expenses to a person who wrongfully retains a child, except where such shifting would be "clearly inappropriate." Id. The award of fees and costs serves two purposes: (1) "to restore the applicant to the financial position he or she would have been in had there been no removal or retention" and (2) "to deter such removal or retention." Hague International Child Abduction Convention: Text and Legal Analysis, 51 Fed. Reg. 10494–01, 10511 (Mar. 26, 1986).

ICARA requires Respondent to show that it would be clearly inappropriate to grant attorney's fees and expenses to Petitioner. In opposing Petitioner's motion, Respondent argues that the attorney's fees and expenses sought by Petitioner are clearly inappropriate because they are excessive. (ECF No. 73 at 1.) Specifically, Respondent asserts that the attorney's fees sought by Petitioner are excessive because her attorney engaged in overbilling by filing frivolous motions and by over-preparing for hearings and/or trial. (Id. at 2-4.) Respondent further asserts that the non-legal expenses sought by Petitioner are excessive because her husband did not need to travel to the United States with her because he was not a party to these proceedings. (Id. at 4-5.)

In addition, Respondent argues that an award of attorney's fees and expenses is clearly inappropriate because of his financial circumstance. (Id. at 5.) In this regard, Respondent asserts that his financial condition warrants a finding of clear inappropriateness because he now has the added expenses of having to travel to England to see M.S.T. and A.D.T. and attempting to resolve the inevitable, expensive custody litigation. (Id.)

The court considered Respondent's arguments and is not convinced that the alleged

excessiveness of the attorney's fees and expenses sought by Petitioner requires a finding that the fees and expenses are clearly inappropriate. The court cannot ignore that Respondent's actions caused Petitioner to incur considerable expenses in a situation where the court ordered the return of M.S.T. and A.D.T. to her. Therefore, the court finds that Respondent has failed to establish that it would be clearly inappropriate for the court to award attorney's fees and expenses to Petitioner. Accordingly, the court must determine the reasonableness of the dollar amount requested by Petitioner for attorney's fees and expenses.

B.     Petitioner's Request for Attorney's Fees

Petitioner moves for necessary expenses, requesting $30,577.05 to compensate her for attorney's fees and other legal expenses incurred in bringing this matter. (See ECF No. 71 at 7-10.) Specifically, Petitioner asserts that in order to prevail, she had to procure necessary services from (1) local South Carolina counsel, Kirby Mitchell ("Mitchell") of South Carolina Legal Services; (2) out of state lead counsel with experience and expertise in Hague Convention matters, Stephen J. Cullen ("Cullen") and Kelly A. Powers ("Powers") of Miles & Stockbridge P.C.; and (3) an English law expert on the rights of custody under English law, Simon Craddock of Brethertons LLP. (E.g., ECF No. 71 at 7.) Petitioner asserts that she does not seek reimbursement for Mitchell's time, and she only seeks a fixed fee of $5,309.55 for Craddock's time and $3,292.50 for his out-of-pocket travel expenses. (Id. at 4, 6 (referencing ECF No. 71-4).) Petitioner further asserts that her request for $21,975.00 in fees for the Miles & Stockbridge attorneys is a significant financial concession because their legal fees in actuality amount to $74,796.50.[2] (Id. at 7 (referencing ECF No. 71-1).) Based on the foregoing, Petitioner argues

---

[2] Petitioner asserts that Cullen and Powers reasonably expended 170.8 hours on this matter. (ECF No. 71 at 7.) Therefore, Petitioner asserts that based on Cullen's reasonable hourly rate of $550.00 and Powers' reasonable hourly rate of $375.00, the value of time expended by Cullen and Powers on this matter amounts to $74,796.50 in attorney's fees. (Id.)

that her request for attorney's fees and other legal expenses should be granted in the amount of $30,577.05. (Id. at 10.)

The determination of a reasonable attorney's fee is a matter of discretion with the court. See Robinson v. Equifax Info. Servs., 560 F.3d 235, 243 (4th Cir. 2009). In determining the amount of reasonable attorney's fees to award under ICARA, federal courts typically apply the lodestar method. See, e.g., Neves v. Neves, 637 F. Supp. 2d 322, 339-340 (W.D.N.C. 2009); Wasniewski v. Grzelak–Johannsen, 549 F. Supp. 2d 965, 971 n.5 (N.D. Ohio 2008); Distler v. Distler, 26 F. Supp. 2d 723, 727 (D.N.J. 1998); Freier v. Freier, 985 F. Supp. 710, 712 (E.D. Mich. 1997); Berendsen v. Nichols, 938 F. Supp. 737, 738 (D. Kan. 1996); Trudrung v. Trudrung, No. 1:10-CV-73, 2010 WL 2867593, at *2 (M.D.N.C. July 21, 2010); Flynn v. Borders, No. 5:06–323–JMH, 2007 WL 862548, at *2 (E.D. Ky. Mar. 20, 2007); Friedrich v. Thompson, No. 1:99–CV–772, 1999 WL 33951234, at *3 (M.D.N.C. Nov. 26, 1999). Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. Robinson, 560 F.3d at 243.

In determining what constitutes a reasonable number of hours and rate, the court considers the following twelve factors set out in Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978): (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional

relationship between attorney and client; and (12) attorney's fees awards in similar cases. Id.; see also Robinson, 560 F.3d at 245 (reaffirming use of the Barber factors). While the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. E.E.O.C. v. Serv. News Co., 898 F.2d 958, 965 (4th Cir. 1990).

   *1.     Reasonable Hourly Rate*

Petitioner asserts that she hired Cullen and Powers of Miles & Stockbridge P.C. out of Washington, D.C., because of their experience at trying Hague Convention cases. (ECF No. 71 at 17.) In this regard, Petitioner argues that hourly rates of $550.00 for Cullen and $375.00 for Powers "are within the range of current reasonable rates in the District of South Carolina for lawyers with comparable skills and experience at firms of similar reputation and resources." (Id.) Petitioner further argues that she had to find counsel outside of the South Carolina legal community because she could not find a Hague Convention specialist within the state. (Id. at 18.)

Petitioner did not file any affidavits to support the hourly rates proposed for Cullen and Powers. Generally, petitioners for legal fees are required to file affidavits from other attorneys to support claims regarding the prevailing market rates of attorneys in the community for similar cases. See Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) (Fee applicants bear the burden of establishing that the rates they request are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.") (internal citations and

7

quotation marks omitted); Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) ("The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits.") (citing Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988)).  In this regard, the evidence supplied by Petitioner to establish the market rate for her attorneys would normally be inadequate to support an attorney's fee award.  See Robinson, 560 F.3d at 246 (holding district court abused its discretion in awarding fee where court relied solely on affidavit of plaintiff's attorney in determining prevailing market rate); see also Grissom v. Mills Corp., 549 F.3d 313, 322–23 (4th Cir. 2008).  However, in the absence of specific evidence regarding the prevailing market rate, the court may establish a reasonable rate based upon its own knowledge and experience of the relevant market.  Neves, 637 F. Supp. 2d at 341-342.  In this regard, the court accepts the hourly rates for Cullen and Powers as requested by Petitioner based on her unopposed suggestion that child abduction cases under ICARA do not routinely occur in this community and the rates are reasonable based on the novelty and complexity of the relevant issues.  (Citing ECF No. 71 at 15, 17-18.)

   *2.     Hours Reasonably Expended*

Beyond establishing a reasonable hourly rate, the court is required to calculate the number of hours reasonably expended by the prevailing party seeking attorney's fees.  In making this determination, "the court should not simply accept as reasonable the number of hours reported by counsel."  Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. 5, C/A No. 8:04-1866-HMH, 2007 WL 1302692, at *2 (D.S.C. May 2, 2007) (citing Espinoza v. Hillwood Square Mut. Ass'n, 532 F. Supp. 440, 446 (E.D. Va. 1982)).  The number of hours should exclude hours that are "excessive, redundant, or otherwise unnecessary" in order to arrive at the number of hours that would be properly billed to the client.  Hensley v. Eckerhart, 461 U.S. 424,

434 (1983).

In support of her motion, Petitioner submitted a billing information memo from Miles & Stockbridge P.C. to establish the hours expended. (See ECF No. 71-1.) Upon review of this document, the court notes that Cullen and Powers spent approximately one hundred eighty-one (181) hours working on this matter. (Id. at 3.) The court further notes that Petitioner only seeks compensation for forty-six (46) hours (nineteen (19) for Powers and twenty-seven (27) for Cullen) out of the one hundred eighty-one (181) hours specified on the billing information memo. (See ECF No. 71 at 9-10; see also ECF NO. 71-1 at 1-3.) In analyzing the hours spent litigating this matter in the context of the relative Barber factors, and considering Respondent's objections regarding excessiveness due to overbilling, the court carefully reviewed Cullen and Powers' time submissions and finds that the forty-six (46) hours of billable attorney time sought by Petitioner were reasonably necessary to litigate the return of M.S.T. and A.D.T. to her.

   *3.     Final Determination of Attorney's Fees and Expenses*

Based on the foregoing, the court finds that attorney's fees in the amount of $21,975.00 are reasonable and appropriately awarded to Petitioner in this matter. In addition, the court finds that Petitioner should receive $8,602.05 for expenses associated with retaining the services of her English law expert.

C.   Petitioner's Request for Non-Legal Expenses

Petitioner also requests an award of $9,603.08 based upon the following non-legal expenses: $3,258.00 for Petitioner and her husband's airfare and hotel for the show cause hearing; $328.00 for Petitioner's rental car expenses for the show cause hearing; $3,335.00 for Petitioner and her husband's airfare and hotel for the bench trial; and $2,680.81 for M.S.T. and A.D.T.'s airfare to the United Kingdom. (ECF No. 71 at 19-20.) Petitioner attached to her

motion receipts for these expenditures. (ECF Nos. 71-5, 71-6, 71-7, 71-8.)

Upon review of the documentation in support of the non-legal expenses claimed by Petitioner, the court finds that the non-legal expenses for her airfare, hotel, and rental car and M.S.T. and A.D.T.'s airfare were reasonable and necessary to Petitioner's efforts to have the children returned to the United Kingdom. However, the court agrees with Respondent that it would be clearly inappropriate to require him to pay for Jamie Hirst's airfare since his participation in this matter was not necessary to the return of M.S.T. and A.D.T. to Petitioner. Therefore, the court deducts $2,962.78 from the airfare expenses sought by Petitioner and finds the remaining amount of $6,640.30 in non-legal expenses reasonable and necessary to Petitioner's efforts to have M.S.T. and A.D.T. returned to her.

### III.   CONCLUSION

Upon careful consideration of the entire record and the arguments of the parties, the court hereby **GRANTS IN PART** the motion by Petitioner Amor Paulina Hirst for necessary expenses, and **AWARDS** Petitioner legal fees in the amount of $30,577.05 and non-legal expenses in the amount of $6,640.30, for a total of $37,217.35.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Judge

December 20, 2013
Greenville, South Carolina

10