# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Amor Paulina Hirst, ) | Civil Action No. 6:13-00729-JMC |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Xavier Emanuel Guillaume ) | |
| Salvatore Tiberghien, ) | |
| ) | |
| Respondent. ) | |
| ) | |

This matter is before the court on Respondent Xavier Emanuel Guillaume Salvatore Tiberghien's ("Respondent") motion to reconsider an order of the court pursuant to Fed. R. Civ. P. 59(e). (ECF No. 79.) In the order filed on December 20, 2013 (the "December Order"), the court granted in part and denied in part a motion by Petitioner Amor Paulina Hirst ("Petitioner") for necessary expenses, and awarded Petitioner legal fees in the amount of $30,577.05 and non-legal expenses in the amount of $6,640.30, for a total of $37,217.35. (ECF No. 78 at 10.) Petitioner opposes the motion to reconsider arguing that Respondent has failed to meet his burden to establish that he is entitled to any relief or reconsideration of the December Order. (ECF No. 81.) For the reasons stated below, the court **DENIES** Respondent's motion to reconsider.

## RELEVANT BACKGROUND TO PENDING MOTION[1]

Petitioner and Respondent were married on May 17, 1996, in South Africa. (ECF No. 64 at 4.) They have two (2) children, M.S.T. and A.D.T. (collectively the "children"), who were

---

[1] The December Order (ECF No. 78) and the court's May 3, 2013 order (ECF No. 64) en masse provide a thorough recitation of the relevant factual and procedural background of the matter and are incorporated herein by reference.

1

born in Johannesburg, South Africa and thus are citizens of South Africa.[2] (ECF No. 64 at 4.) Petitioner and Respondent lived together as a family in South Africa until they separated in May 2007 and divorced on July 25, 2008. (*Id*.) The parties entered into a Parenting Plan and Settlement Agreement ("South African Agreement"), which was adopted by a South Africa High Court. (*Id*.) The South African Agreement provided that Petitioner and Respondent would have joint parental responsibility for the children and established that the children would reside with Petitioner, but should have extensive contact with Respondent. (*Id*.) However, the children lived with Respondent from September 2008 until February 2011 due to Petitioner being unable to control the children's behavior, specifically M.S.T.'s attempts to run away. (ECF No. 64 at 5.) In February 2011, Respondent relocated to Greer, South Carolina and Petitioner and Respondent agreed that the children would live with Petitioner until Respondent was able to arrange for them to relocate to the United States. (*Id*.) On October 15, 2011, Petitioner married Jamie Hirst, a citizen of the United Kingdom, and Petitioner and the children relocated from South Africa to Manchester, England on November 5, 2011. (*Id*.) The children resided with Petitioner and only saw Respondent during visits from February 2011 until January 7, 2013. (*Id*.)

Petitioner filed this action against Respondent as a verified petition for the return of the children to the United Kingdom (the "Petition") pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11611. (ECF No. 1.) Specifically, Petitioner alleged that Respondent wrongfully retained the children in the United States without Petitioner's consent starting on January 7, 2013. (ECF No. 1 at 2, 4-5.) On April 30, 2013, the court granted the Petition and ordered the return of the children to

---

[2] Specifically, M.S.T. was born in 2002 and A.D.T. was born in 2003. (ECF No. 64 at 4.)

Petitioner. (ECF No. 59.) The children returned to the United Kingdom on May 4, 2013. (ECF No. 69.) Petitioner filed a motion for necessary expenses on May 17, 2013. (ECF No. 71.)

On July 5, 2013, Petitioner contacted Respondent to make arrangements to send the children back to the United States to live with Respondent due to the children's chronic behavioral problems, specifically M.S.T.'s running away from home. (ECF No. 85 at 1.) It is undisputed that the children have been in Respondent's physical custody in Greer, South Carolina since July 30, 2013. (ECF Nos. 85 at 1, 81.) Petitioner further does not dispute Respondent's claim that the cost of raising the children would be his sole responsibility. (*Id.*)

## LEGAL STANDARD

Fed. R. Civ. P. 59(e) Motions

The decision whether to reconsider an order pursuant to Rule 59(e) is within the sound discretion of the district court. *Hughes v. Bedsole*, 48 F.3d 1376, 1382 (4th Cir. 1995). Under Rule 59(e), a court may "alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010); *see also Collison v. Int'l Chem. Workers Union*, 34 F.3d 233, 235 (4th Cir. 1994). It is the moving party's burden to establish one of these three grounds in order to obtain relief under Rule 59(e). *Loren Data Corp. v. GXS, Inc.*, 501 Fed. App'x 275, 285 (4th Cir. 2012). The decision whether to reconsider an order pursuant to Rule 59(e) is within the sound discretion of the district court. *Hughes v. Bedsole*, 48 F.3d 1376, 1382 (4th Cir. 1995).

Attorney's Fee Awards under ICARA

The factors governing the court's discretion in awarding fees and expenses in international child return cases are based upon the same general factors governing the court's discretion to award attorney's fees to prevailing parties. *See Ozaltin v. Ozaltin*, 708 F.3d 355,

3

375 (2d Cir. 2013) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). The Federal Rules of Civil Procedure codify a presumption that prevailing parties are entitled to costs. *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013). However, upon a finding of the losing party's good faith, a court may deny an award of costs when there would be an element of injustice. *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999). In finding an element of injustice, a court should consider five elements (1) misconduct by the prevailing party, (2) the unsuccessful party's inability to pay the costs, (3) the excessiveness of the costs in a particular case, (4) the limited values of the prevailing party's victory, or (5) the closeness and difficulty of the issues decided. *Ellis v. Grant Thornton LLP,* 434 Fed. App'x 232, 235 (4th Cir. 2011) (citing *Cherry*, 186 F.3d at 446).

As to the standard for awards of fees and expenses, ICARA provides a court "ordering the return of a child pursuant to an action brought under section 11603 of this title shall order respondent to pay necessary expenses incurred by or on behalf of the petitioner . . . unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3). While ICARA shifts the burden to the respondent to show why an award of fees, costs, and expenses would be "clearly inappropriate," it also provides the district court with "broad discretion in its effort to comply with the Hague Convention consistently with its own laws and standards." *West v. Dobrev,* 735 F.3d 921, 932 (10th Cir. 2013) (quoting *Whallon v. Lynn*, 356 F.3d 138 (1st Cir. 2004)).

Exercising this discretion, courts have reduced awards based upon a respondent's financial circumstances. *See Distler v. Distler*, 26 F. Supp. 2d 723, 729 (D.N.J. 1998) (quoting 42 U.S.C. § 11607(b)(3)); *Berendsen v. Nichols*, 938 F. Supp. 737, 739 (D. Kan. 1996) (reducing award by 15% in light of respondent's financial condition and because awarding full fee would unduly limit respondent's ability to support his children); *Rydder v. Rydder*, 49 F.3d 369, 373-74

4

(8th Cir. 1995) (reducing fee award by 46% due to respondent's "straitened financial circumstances"); *see also Clarke v. Clarke*, C.A. No. 08-CV-690, 2008 WL 5191682, at *3–4 (E.D. Pa. Dec. 11, 2008) (award of fees and costs to father in the amount sought [$163,505.89] was "clearly inappropriate" given respondent's "dire" financial circumstances and court awarded a reduced amount [$77,209.77] after considering respondent's "financial circumstance, and, to some extent, her motivation in creating the need for a Hague Convention petition . . . in the first place" and "balancing between what was necessary for petitioner and what is appropriate to assess against respondent"); *Willing v. Purtill*, Civ. No. 07–1618–AA, 2008 WL 299073, at *1 (D. Or. Jan. 31, 2008) (reducing fee award by 15% due to respondent's financial circumstances, particularly his unemployment); *Silverman v. Silverman*, No. Civ. 00–2274 JRT, 2004 WL 2066778, at *4 (D. Minn. Aug. 26, 2004) (eliminating fee where respondent had no ability to pay, and prevailing petitioner did not abide by prior court orders, had failed to support children financially in the past, and had been physically and mentally abusive to respondent).

      Similarly, circuit courts have provided a non-exhaustive set of factors for district courts to consider in exercising their discretion and equitable consideration of claims for fees and expenses.  One relevant equitable factor is the reasonable belief that the actions taken are consistent with the law of the country of habitual residency at the time of the child's removal. *Ozaltin*, 708 F.3d at 375.  The court can take this reasonable belief into consideration when determining the amount of the fee award.  At least two appellate courts have also recognized that another equitable factor is the impact of the fee award on the ability of the defendant-parent to care for the child.  *Whallon*, 356 F.3d at 139; *Rydder*, 49 F.3d at 373–74.  In *Rydder*, the Eighth Circuit held that because of a losing respondent's straitened financial circumstances, the award of fees and legal costs was so excessive as to constitute an abuse of discretion.  *Rydder*, 49 F.3d at 373–74.

Furthermore, several district courts have not simply reduced awards of costs in light of a losing respondent's inability to pay, but have denied to award costs at all on the ground that any award would be inappropriate in such circumstances.  *See, e.g., Montero-Garcia v. Montero*, 2013 WL 6048992, at *4–6 (W.D.N.C. Nov. 14, 2013) (declining to award fees to petitioner, because doing so would convert counsel's pro bono work into debt); *Lyon v. Moreland-Lyon*, 2012 WL 5384558, at *3 (D. Kan. Nov. 1, 2012) (finding that given respondent's financial position, the awarding of any of petitioner's attorneys' fees against the respondent would be clearly inappropriate); *Vale v. Avila,* 2008 WL 5273677, at *2 (C.D. Ill. 2008) (reasoning an award of any attorney's fees is clearly inappropriate because of respondent's inability to pay where respondent "has limited financial means and has found little gainful employment in the United States, " and thus awarding the petitioner only out of pocket costs).

In contrast, where the defendant "is not blameless for the current state of affairs," the Tenth Circuit has held that an award of fees and expenses is not "clearly inappropriate."  *West*, 735 F.3d at 933.  An award of fees and costs is appropriate when the case falls squarely within the provisions of the Hague Convention.  *Cuellar v. Joyce,* 603 F.3d 1142, 1143 (9th Cir. 2010) (finding that respondent owing substantial fees to his own attorney or the prevailing petitioner's attorney provided their services *pro bono* does not make an award of petitioner's fees "clearly inappropriate."), *but see Vale,* 2008 WL 5273677, at *2 (stating that although the fact that plaintiff was represented under a pro bono arrangement does not, by itself, render an award of attorney fees clearly inappropriate, it is a factor that can reduce an award.).  A reduction in a fee award should not be used to remedy a winning petitioner's past violations of child support obligations.  *See Whallon*, 356 F.3d at 140 (declining "respondent's belated invitation to use a fee award determination arising out of Hague Convention proceedings as a means of rectifying past violations of child support obligations.").

6

## ANALYSIS

In his motion to reconsider, Respondent does not allege a change in law or new evidence that was unavailable at trial. He also does not appear to take issue with the court's findings and conclusions of law in the December Order. Instead, the court construes Respondent's motion as seeking reconsideration on the basis that it would be a manifest injustice if he were held monetarily responsible for the entire amount of legal fees and expenses awarded to Petitioner in the December Order.

In support of his motion to reconsider, Respondent relies on events that occurred after the court issued the December Order. More specifically, Respondent alleges that Petitioner contacted him to take the children on July 5, 2013, and the children have lived with him since July 30, 2013. (ECF Nos. 85, 85–1, 81.) Respondent alleges that Petitioner demanded that he (1) pay $4,200.00 to have a custody agreement drafted, (2) pay Petitioner £2,000.00 in British Sterling pounds (approximately $3,000.00) upon her signing the agreement, and (3) purchase round trip tickets costing $5,200.00. (*Id.*) Respondent further alleges that he is unable to pay the necessary expenses awarded to Petitioner in the December Order because he has only been able to work fifteen (15) to twenty (20) hours per week since he needed to care for his children, his job only paid $9.00 per hour, and he owes legal debt incurred from the ICARA action, which consists of $12,700.00 of debt incurred when he obtained custody of his children from Petitioner, and $1,000.00 of debt incurred when Petitioner failed to send the children's clothes in July 2013. (ECF Nos. 79, 85.) In addition, Respondent alleges misconduct by Petitioner for denying him the right repeatedly to talk to the children when they were living with her. (ECF No. 85-1 at 1.) Respondent submits the aforementioned facts as evidence that enforcing the December Order would result in a manifest injustice to him since he is carrying the entire financial burden of supporting the children and paying for litigation rendered unnecessary by Petitioner's actions

7

merely eight (8) weeks after the children returned to the United Kingdom.  (*See* ECF Nos. 79, 85.)

In her response in opposition to the motion to reconsider, Petitioner asserts that Respondent has misrepresented his financial status to the court and provides numerous exhibits to establish that Respondent is a successful businessman.  (ECF Nos. 86, 86-1, 86-2.)  Petitioner further asserts that shifting the costs of the ICARA action to Respondent was not clearly inappropriate because "Respondent's actions caused Petitioner to incur considerable expenses in a situation where the court ordered the return of [her children]."  (ECF Nos. 78 at 5, 81 at 4.)  However, Petitioner does not dispute that Respondent also incurred considerable expenses when she engaged in the ICARA action and then only eight (8) weeks later, demanded that Respondent travel to the United Kingdom to take the children back to the United States to live, have an agreement drafted, and pay her $3,000.00 when she signed the agreement.  (ECF Nos. 81, 85, 85-1 at 3.)  Furthermore, Petitioner does not dispute Respondent's assertions that he is expected to solely support the children without Petitioner providing any financial assistance.  (ECF Nos. 81, 85.)  Finally, Petitioner does not dispute that in July 2013, Respondent had to purchase clothing for the children because Petitioner sent them back to the United States without clothes.  (*Id.*)

Upon review, the court does not find that the award of legal fees and non-legal expenses to Petitioner is manifestly unjust based on the information presented by Respondent.  Respondent did not submit any documentation (*i.e.*, bank statements, federal tax returns, W-2s) to corroborate that his inability to pay Petitioner expenses is due to financial difficulties.  Moreover, the court does not have an adequate record upon which to determine the circumstances of the private agreement between Respondent and Petitioner under which the children were returned.[3]  (ECF

---

[3] The court notes concern that Petitioner never mentioned or provided an explanation for the

Nos. 79, 81, 85, 85-1, 86.)  Furthermore, to grant Respondent's motion to reconsider, the court would have to ignore the December Order, in which the court found that Respondent wrongfully detained the children initially.  (ECF No. 64.)

In addition to the foregoing, the court notes that ICARA's shifting of the prevailing party's costs to the other party serves two (2) purposes: (1) "to restore the applicant to the financial position he or she would have been in had there been no removal or retention" and (2) "to deter such removal or retention."  Hague International Child Abduction Convention: Text and Legal Analysis, 51 Fed. Reg. 10494–01, 10511 (Mar. 26, 1986).  In this case, the court is bound by the presumption that Petitioner as the prevailing party is entitled to the award of attorney's fees and non-legal expenses because Respondent's evidence in support of his claim of financial difficulties does not sufficiently overcome Petitioner's evidence refuting Respondent's claim that he is unable to pay.  Accordingly, the court is persuaded that shifting the costs of the ICARA action to Respondent would not create a manifest injustice or be clearly inappropriate.

## CONCLUSION

For the foregoing reasons, the court **DENIES** Respondent's motion for reconsideration of the court's December 20, 2013 order.  (ECF No. 79.)

---

events of July 2013.  Since Petitioner failed to deny or respond to Respondent's allegations regarding the events of July 2013 or the cash payment to Petitioner in July 2013, the court acknowledges that Petitioner's silence and her conduct in July 2013 and in legal filings since May 2013 cast doubt on the necessity of the ICARA litigation.  The court acknowledges that the children are in Respondent's physical custody and Petitioner's actions caused Respondent to incur considerable expenses by engaging in an ICARA action and demanding a mere eight (8) weeks later that Respondent do exactly what Petitioner originally objected to in the ICARA action.  Moreover, there is no evidence that Petitioner has provided any financial assistance with supporting her children since July 30, 2013 or that she intends to provide any future assistance while the children are in Respondent's custody.  Since the court has not received the details of the arrangement or whether Respondent owed past child support, the court cannot determine the appropriateness of the financial arrangement.  The court finds Petitioner's silence about these allegations and her potential shifting of the financial aspect of her parental responsibilities to Respondent troubling.  Nevertheless, mere doubt about the necessity of the ICARA litigation, change in custody of the children, and Petitioner's failure to completely respond to Respondent's allegations are not enough to legally justify a complete or partial grant of Respondent's motion.

**IT IS SO ORDERED.**

United States District Judge

July 23, 2014
Columbia, South Carolina

10